## HUBBARD *et al.* *v.* BARRY.

THE rule that the claimant in ejectment must recover upon the strength of his
own title, is in this State so far modified that a plaintiff may recover upon
proof of a possession prior to that of the defendant, notwithstanding it be
shown that the real title is in a stranger, with whom neither party has any con-
nection, and this, whether such real owner be an individual or a corporation,
or the Government of the United States.

The Van Ness Ordinance was framed upon the theory, that the better right to the
bounty of the city vested with the first possessor, provided his possession was
actual, and had not been voluntarily abandoned, and such prior actual pos-
sessor is entitled to the benefits of the ordinance, notwithstanding an interrup-
tion of his possession by the intrusion or trespass of others.

A Justice of the Peace of San Francisco in 1849 had no authority as such to
make grants of the pueblo lands of that city, and a grant made by him is
inoperative for any purpose whatever.

APPEAL from the Twelfth Judicial District.

The facts are stated in the opinion of the Court.

*H. S. Love,* for Appellant.

I.   It is conceded by the appellants that a plaintiff may recover in an action of ejectment simply upon prior possession without deraigning his title back to its original source, or to the sovereign power (where all title to lands in the first instance is vested). This universal rule is founded on one of the most plain and simple propositions—that is, that the person having the possession of lands is presumed to be the owner, until the contrary appears.   It will not be contended that prior possession of lands proves absolutely title in the possessor.   At most, such possession is only presumptive title in the possessor, and although it might be conceded that a plaintiff had prior possession of a lot on a given day, yet if at the same time he conceded that he had no title, it would not be contended that he could maintain an action of ejectment to recover possession of the land.   If the rule were otherwise, the law would be guilty of the absurdity of preferring one out of possession and without title, or the right of possession, to one in the actual possession.

If we are right in this, then it follows, that the plaintiffs cannot recover in this action.   It is stipulated and agreed that the lands in question were a portion of the lands belonging to the Mexican pueblo, and that the Mexican pueblo was the " predecessor of the city of San Francisco."   It therefore follows, that if the title was in the city of San Francisco, it must remain there still, unless the city has parted with that title, and in no event can the plaintiffs in this action recover.

II.   Assuming, then, (as is conceded) that the title was in the city of San Francisco, and that the city has not parted with the title, or with the right of possession, unless the Colton grant conveyed such title ; and assuming, for the sake of the argument, that Colton, as such Justice of the Peace, had no legal power to convey the interest of the city to the defendant, yet we say that within the principle of the case of *Hubbard* v. *Sullivan* (18 Cal. 508) the defendant entered into possession of the lot in question, and was in the actual possession of the same on the first day of January, 1855,

at the time of the passage of the Van Ness Ordinance, and that such grant by Colton to the defendant was effectual as a license from the city to the defendant to enter into possession of the lot and to hold the same, even if such grant was not operative to pass the title to the defendant; that although the grant made by Colton did not pass the legal title of the lot to defendant, yet upon the passage of the Van Ness Ordinance of 1855 and the Act of the Legislature of 1858 confirming it, the defendant holding this lot through the city and under this Colton grant, it operated as a license; and having such actual possession, he may be considered in law as having possession for the city of San Francisco, and will be protected against the prior possession of the plaintiffs or their grantors.

*S. W. Inge*, for Respondent.

Plaintiffs claim under White, who was in possession on the sixteenth of October, 1849, and so continued until he was forcibly evicted by the defendant, who now seeks to justify his trespass under a Colton grant. White's possession was a valid, legal possession upon which he or his vendors may maintain ejectment. (4 Cal. 94; 6 Id. 172, 649; 9 Id. 427; 5 Id. 87, 249, 266; 10 Id. 22.)

The Colton grant is invalid and inoperative for any purpose.

FIELD, C. J. delivered the opinion of the Court—COPE, J. and NORTON, J. concurring.

This is an action of ejectment for the recovery of certain real estate situated in the city of San Francisco. The premises constitute a portion of the municipal lands of the old pueblo. The plaintiffs rely upon the prior possession in 1849 and 1850 of one Thomas White, through whom they claim. The defendant rests his defense upon a grant issued by a Justice of the Peace of San Francisco, by the name of Colton, in December, 1849, and the alleged operation in his favor of the Van Ness Ordinance.

On the trial it was admitted, that in October, 1849, White, the grantor of the plaintiffs, entered into peaceable and exclusive possession of certain lands of the pueblo, then vacant and unoccupied,

and caused the same to be accurately surveyed, and inclosed with a substantial and permanent fence; that he erected thereon a dwelling-house, store-house, and other houses, which were occupied by him and family as a residence and for business purposes; that in July, 1850, he leased a portion of the lands (that in controversy in the present action) for one year, and placed the lessee in possession; that while the lessee was in possession, the defendant entered upon the demised premises, and dispossessed him, and has ever since held the possession adversely to the plaintiffs.

The defendant's counsel does not question the doctrine, that in ejectment the plaintiff may recover against an intruder or trespasser upon proof of his having had prior possession of the premises. His position is, that as possession is merely presumptive evidence of title, it loses its efficacy when the title is shown to be outstanding in a third party; that the presumption arising from the possession is then met and overcome, and the basis upon which the action rests is removed. This is only another form of stating the general doctrine of the law, that the claimant in ejectment must recover upon the strength of his own title, and not upon the weakness of his adversary's, and that it is a sufficient answer to his action to show title out of him and in a third party. In *Coryell* v. *Cain* (16 Cal. 572) we had occasion to observe, that this doctrine, undoubtedly true as a general rule, had been, to a certain extent, qualified and limited in this State from the anomalous condition of things arising from the peculiar character of the mining and landed interests of the country. "The larger portion of the mining lands," we there said, "within the State belong to the United States, and yet that fact has never been considered as a sufficient answer to the prosecution of actions for the recovery of portions of such lands. Actions for the possession of mining claims, water privileges, and the like, situated upon the public lands, are matters of daily occurrence, and if the proof of the paramount title of the Government would operate to defeat them, confusion and ruin would be the result. In determining controversies between parties thus situated, this Court proceeds upon the presumption of a grant from the Government to the first appropriator of mines, water privileges, and the like. This presumption, which would have no place for consideration as against

the assertion of the rights of the superior proprietor, is held absolute in all those controversies. And with the public lands which are not mineral lands, the title as between citizens of the State, where neither connects himself with the Government, is considered as vested in the first possessor, and to proceed from him."

A similar rule is followed by us, though not founded upon a like presumption, in controversies for the possession of lands where the real title is not in the Government, but is in an individual with whom, or in a corporation with which neither party connects himself. The owner of the true title not objecting or consenting to the possession of either of the parties, the Court regards the better right, as between the parties, to be vested in the first possessor and grantees claiming through him. The rule rests upon its necessity for the preservation of peace and quiet in a country where titles to tracts of land, measured by leagues, are under consideration by the tribunals of the United States, and there is an indisposition, in numerous instances, on the part of claimants to assert their legal rights against the occupants until the final action of those tribunals. (See *Bequette* v. *Caulfield*, 4 Cal. 278, and *Bird* v. *Lisbros*, 9 Id. 5.)

The Van Ness Ordinance was framed upon the theory that the better right to the bounty of the city rested with the first possessor, provided his possession was actual—that is, accompanied with the real and effectual enjoyment of the property, and had not been voluntarily abandoned. And while it fixes the date at which such actual possession must have existed, to entitle a party to its benefits, prior to or on the first of January, 1855, it specially excepts parties from the necessity of establishing a continued actual possession, where such possession had been interrupted by the intrusion or trespass of others.

We do not perceive how the grant of the Justice of the Peace, Colton, could have conferred any rights upon the defendant. No law has been cited to us authorizing any disposition by the Justice of the lands of the pueblo. In the absence of such authority the grant was inoperative for any purpose.

Judgment affirmed.